Opinion filed August 16, 2007

















 
 
  
 
 







 
 
  
 
 




Opinion filed August 16, 2007

 

 

 

 

 

 

                                                                        In The

 

          Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00362-CV 

                                                     __________

 

                    JOHN C. STUKES AND JOAN F. STUKES, Appellants

                                                             V.

MARVIN BACHMEYER, INDIVIDUALLY AND D/B/A 

MARVIN BACHMEYER ROAD CONSTRUCTION CO., Appellee

 



 

                                          On
Appeal from the 26th District Court 

                                                      Williamson County, Texas

                                               Trial
Court Cause No. 03-563-C26

 



 

                                                                   O P I N I O N

John C. Stukes and Joan F. Stukes appeal from the
jury=s adverse
findings on their claims against Marvin Bachmeyer, individually and d/b/a
Marvin Bachmeyer Road Construction Co. and the jury=s
findings on Bachmeyer=s
claim for attorney=s
fees.  We affirm on suggestion of
remittitur.

I.  Background
Facts








Bachmeyer and the Stukeses owned neighboring
properties.  They entered into an oral
agreement to allow Bachmeyer to use the Stukeses=
property to graze cattle.  In exchange,
Bachmeyer agreed to replace the fence separating the two properties.  The parties also agreed that the Stukeses
would pay Bachmeyer for his labor and materials to remove brush and otherwise
improve the Stukeses=
property.  The total value of Bachmeyer=s services was $8,186.  However, 
the Stukeses did not pay him, and he sued.  The Stukeses filed counterclaims for breach
of contract, negligence, trespass, promissory estoppel, and a declaratory
judgment.  Specifically, they asserted
that Bachmeyer failed to perform his services in a good and workmanlike manner
because (1) portions of the property had been flooded unnecessarily requiring
repairs to roadways and replanting of pasture, (2) Bachmeyer removed many trees
that were not authorized to be removed by the Stukeses, (3) Bachmeyer removed
vegetation in a manner that left the real property uneven and unsuitable for
pasture, (4) Bachmeyer failed to fertilize and to control weeds or did so in an
improper manner, (5) Bachmeyer installed fencing in an uneven manner that
encroached on the boundaries of the real property, (6)  Bachmeyer damaged the Stukeses= tractor, and (7) Bachmeyer altered the
natural terrain of the property in a manner that directs excess water runoff onto
the Stukeses=
property.

The case was tried to a jury.  It found in Bachmeyer=s
favor on all claims.  The trial court
entered a judgment ordering that the Stukeses take nothing by their
counterclaims, that Bachmeyer recover actual damages from the Stukeses in the
amount of $8,186 plus interest, and that Bachmeyer recover attorney=s fees in the amount of $17,250 for
trial and $4,000 in the event of an appeal.

                                                              II.  Issues on Appeal  

The Stukeses bring two issues on appeal.  First, they contend that the evidence is
legally and factually insufficient to support the jury=s
negative findings on their trespass and negligence claims.  Second, they contend that the evidence is
legally insufficient to support the jury=s
finding on Bachmeyer=s
attorney=s fees
for the trial of this cause.

III.  Standard
of Review 








When a party attacks the legal sufficiency of
adverse findings on issues on which it has the burden of proof, it must
demonstrate that the evidence establishes, as a matter of law, all vital facts
in support of those issues.  Dow Chem.
Co. v. Francis, 46 S.W.3d 237, 241 (Tex.
2001);  McMillan v. Dooley, 144
S.W.3d 159, 170 (Tex. App.CEastland
2004, pet. denied).  We first examine the
record for evidence that supports the jury=s
finding, while ignoring all evidence to the contrary.  If there is no evidence to support the jury=s answer, the entire record must be
examined to see if the contrary proposition is established as a matter of
law.  Dow Chem., 46 S.W.3d at 241.
The issue should be sustained only if the contrary proposition is conclusively
established.  Croucher v. Croucher,
660 S.W.2d 55, 58 (Tex.
1983).

When a party attacks the factual sufficiency of an
adverse finding on an issue on which it has the burden of proof, it must
demonstrate that the adverse finding is against the great weight and
preponderance of the evidence. Dow Chem., 46 S.W.3d at 242; Croucher,
660 S.W.2d at 58.  The court of appeals
must consider and weigh all of the evidence. 
We can set aside a verdict only if the evidence is so weak or if the
finding is so against the great weight and preponderance of the evidence that
it is clearly wrong and unjust.  Dow
Chem., 46 S.W.3d at 242; Chase Manhattan Mortgage Corp. v. Cook, 141
S.W.3d 709, 715 (Tex.
App.CEastland,
2004, no pet.).

                                                                    IV.  Analysis

A.  Are the
Jury=s
Trespass Findings Supported by Sufficient Evidence?

Trespass to real property occurs when a person
enters another=s land
without consent.[1]   Cain v. Rust Indus. Cleaning Servs., Inc.,
969 S.W.2d 464, 470 (Tex. App.CTexarkana
1998, pet. den=d).  A trespass can be by a person or by a person
causing or permitting a thing to cross the boundary of a property.  Cain, 969 S.W.2d at 470.  To recover trespass damages, a plaintiff must
prove that (1) it owns or has a lawful right to possess real property, (2) the
defendant physically, intentionally and voluntarily entered the land, and (3)
the defendant=s
trespass caused damage.  Wilen v.
Falkenstein, 191 S.W.3d 791,797-98 (Tex. App.CFort
Worth 2006, pet. den=d).

The jury charge defined trespass as follows:

ATrespass@ is an unauthorized entry upon land in
the possession of another, or causing a thing or a third person to enter upon
land in the possession of another, or remaining upon land or failing to remove
from land a thing which the actor is under a duty to remove.  Authorization to enter upon land may be
revoked by actual notice to the actor. 
One who intentionally trespasses upon land in possession of another is
subject to liability whether or not the actor causes harm to the other.  A trespass may also be committed through
negligence.  

 

The jury charge also contained the following broad-form trespass
questions:

JURY QUESTION NO. TEN:

Did Plaintiff intentionally
commit a trespass on Defendant=s
property?








 

JURY QUESTION NO. TWELVE:

Did Plaintiff negligently commit a trespass on
Defendant=s
property which caused harm to the Defendant or the Defendant=s land?

 

Negligence is not a required element of a trespass
cause of action.  Gen. Tel. Co. of the
Sw. v. Blacksher, 742 S.W.2d 465, 468 (Tex. App.CHouston
[1st Dist.] 1987, writ denied).  Further-
more, while a plaintiff must prove that the defendant intentionally committed
the act that constitutes a trespass, it need not show that the defendant
intended a trespass.  See Watson v.
Brazos Elec. Power Coop., 918 S.W.2d 639, 646 (Tex. App.CWaco 1996, writ denied) (every
unauthorized entry upon land of another is a trespass without regard to the
intent or motive prompting the trespass). 
The jury charge, however, required the jury to find that Bachmeyer
either intentionally or negligently committed a trespass.  The Stukeses did not object to these
questions.  They were, therefore,
required to show more than simple trespass, and we must assume that the charge
correctly stated the law.  See Tex. R. Civ. P. 279.

1. 
Overflow of water.

It is the duty of the lower landowner to receive
the natural flow of surface water.  Cain,
969 S.W.2d at 469.  No person may divert
or impound the natural flow of surface water in a manner that damages the
property of another by the overflow of the water diverted or impounded.  Tex.
Water Code Ann. '
11.086(a) (Vernon 2000). 

Bachmeyer was the lower landowner.  Surface water drains off the Stukeses= property onto his.  John Stukes testified that Bachmeyer=s stock pond was built so that, when
full, the water did not drain off of Bachmeyer=s
property but, rather, was impounded about thirty-five feet under the fence onto
the Stukeses=
property.  He further testified that
Bachmeyer dammed the Awet-weather
creek@ and
caused an overflow of water from the creek that prevented him from accessing
the back sixteen acres of his property. 
The Stukeses offered pictures attempting to illustrate how the
structures Bachmeyer built caused overflow of water onto their property.  The pictures showed water marks indicating
that at some point in time standing water was present on the Stukeses= property, but there was no water in
any of the pictures.








The Stukeses argue that every single unauthorized
entry, invasion, or encroachment onto their property constitutes a
trespass.  This would be generally true,
but the charge required a finding of negligent or intentional trespass.  There was sufficient evidence to support the
jury=s finding
that Bachmeyer did not negligently or intentionally commit a trespass.  Bachmeyer acknowledged putting a crossing
over the wet-weather creek but testified that it contained drainage pipes that
allowed the water to naturally drain off the property.  Bachmeyer also acknowledged constructing a
stock pond with an embankment.  He
testified that he was unaware that the embankment caused an overflow of water
onto the Stukeses=
property.  In fact, Bachmeyer testified
that he discussed the overflow of water with John Stukes and that Stukes said
that it was not a problem.  Bachmeyer
testified that county officials subsequently asked him to lower the stock pond=s embankment because it could cause a
possible overflow of water onto the Stukeses=
property and that he did so.

Tommy Magness testified that he was a registered
engineer and a licensed public surveyor. Magness testified that Bachmeyer hired
him to check flood levels on structures that Bachmeyer had built on his
property to ensure compliance with county rules.  He 
testified that, in his opinion, the structures built on Bachmeyer=s land would not cause any overflow of
water onto the Stukeses=
property.  He further testified that
Bachmeyer was in compliance with the county=s
flood plain laws. 

Testimony from Kevin Stryker, an assistant county
attorney for Williamson
 County, also showed that
Bachmeyer worked to avoid any overflow of water onto the Stukeses= property.  Stryker testified that he worked in
connection with the Williamson County Health District to enforce flood plain
rules.  He was called out to Bachmeyer=s property regarding a complaint that
the Health District had received.  He
testified that his primary purpose was to ensure that Bachmeyer complied with
the county rules and regulations regarding construction in a flood plain.  Stryker testified that Bachmeyer was very
reasonable and wanted to fix any problem.








The Stukeses relied on Stryker=s testimony to show that there was an
overflow of water onto their property due to Bachmeyer=s
actions.  Stryker testified that he
observed water encroaching on the Stukeses=
property and that he thought the overflow could possibly be coming from a
buildup of land on one side of the pond situated on Bachmeyer=s property.  However, he conditioned his testimony by
stating: AAnd, of
course, I=m not an
engineer so I don=t know
that the backup was coming from there, but it looked fairly obvious.@ 
Stryker also testified that he observed a crossing over the wet-weather
creek but did not link it to any overflow of water on the Stukeses= property. Even assuming Stryker=s assumption about the source of the
water encroachment is correct, the mere presence of water is no evidence that
Bachmeyer negligently or intentionally trespassed.

The evidence does not establish that as a matter
of law Bachmeyer negligently or intentionally caused water to trespass onto the
Stukeses=
property.  Further, the jury=s finding is not against the great
weight and preponderance of the evidence. 


2. 
Construction of the Fence.

 An owner
may not construct a building or structure beyond the line dividing his land
from that of his neighbors without incurring liability.  Allen v. Va. Hill Water Supply Corp.,
609 S.W.2d 633, 635 (Tex. Civ. App.CTyler
1980, no writ) (citing McBurney v. Knox, 259 S.W. 667, 674 (Tex. Civ.
App.CBeaumont
1924), aff=d,
273 S.W. 819 (Tex. Comm=n
App. 1925, judgm=t
adopted)).  The Stukeses argue that
Bachmeyer trespassed by constructing the fence in such a way that it encroached
on their property.  Bachmeyer
testified that he and John Stukes discussed putting up a new fence on the
border between their properties and that they discussed the fence=s location.  He further testified that they agreed that he
would cut the underbrush and place the new fence as close as possible to the
old fence line.  Bachmeyer testified that
he does not believe the new fence is off the property line because he followed
the old fence line as closely as possible by using the old property
stakes.  During trial, the parties
entered a stipulation into evidence regarding a survey performed by a
registered surveyor after the fence=s
construction.  The survey shows that in
various places the fence is off the property line by a few feet.  The parties=
stipulation provided that, where the survey stated that the fence was Aoff,@
it meant that it was off of the Stukeses=
property by that number of feet and that, where it stated Aon,@
it was on the Stukeses=
property by that number of feet.     The
mere fact that the fence encroached on the Stukeses=
property is insufficient to establish that Bachmeyer intentionally or
negligently trespassed.  The jury was
free to believe or disbelieve Bachmeyer=s
testimony that the parties agreed to place the new fence as closely as possible
to the old fence and that he did so.  We
must defer to the jury=s
resolution of this credibility issue.








The Stukeses also argue that Bachmeyer trespassed
because he unnecessarily cut down trees on their property.  A landowner that intends to have timber cut
on his property owes a duty to adjoining landowners to ascertain the property
line of adjoining land with diligence and care. 
Schievink v. Wendylou Ranch, Inc., No. 11-06-00025-CV, 2007 WL
1775762 (Tex.
App.CEastland
June 21, 2007, no pet. h.).  In Schievink,
the adjoining landowners did not have an agreement regarding the replacement of
the fence and the removal of the trees. 
However in this case, the Stukeses and Bachmeyer agreed that, to replace
the old fence, some of the trees would have to be removed.  Bachmeyer testified that he informed the
Stukeses that he would have to remove some of the trees to put up a
straight-line fence and that the Stukeses agreed to the removal of the trees.

It is undisputed that Bachmeyer had the right to
remove trees on the Stukeses=
property to construct the new fence. 
Whether he negligently or intentionally exceeded that right is
inherently a fact question.  The jury had
factually and legally sufficient evidence to conclude that he did not.

3. Cleanup of the Property.

The Stukeses argue that Bachmeyer trespassed when
he left piles of brush on their property. 
Bachmeyer was removing the brush at the request of the Stukeses.  Bachmeyer testified that he intended to burn
the brush he cleared but that it needed to cure a couple of months before he
could burn it.  The county implemented a
burn ban before the brush cured.  By the
time it expired, he had received notice from the Stukeses to not enter the
property.  This is sufficient evidence to
support the jury=s
determination that Bachmeyer did not negligently or intentionally exceed his
rights.

B.  Was the Jury=s Negligence Finding Supported by
Sufficient Evidence? 

The Stukeses argue that Bachmeyer was negligent by
allowing water to overflow onto their property and by failing to pinpoint the
property line before he cut down the trees. 
In order to recover on a negligence claim, a party must show (1) a legal
duty owed by one person to another, (2) a breach of that duty, and (3) damage
proximately resulting from such breach.  Harrison
v. Harrison, 597 S.W.2d 477, 482 (Tex. Civ. App.CTyler
1980, writ ref=d
n.r.e.).  The duty need not be one
imposed by contract between the parties but may be one implied by law from the
circumstances and relationship of the parties. 
Id.








The jury charge included a single broad-form
negligence question, and the jury found that Bachmeyer was not negligent.  We have previously found the jury=s trespass findings were supported by
sufficient evidence.  Applying the
applicable standard of review to this same evidence, we also find that it is
legally and factually sufficient to support the jury=s
negligence finding.   Because the jury is
the sole judge of the credibility of the witnesses and of the weight to be
given their testimony, we will not pass upon the credibility of the witnesses
or substitute our judgment for that of the trier of fact, even if there is
conflicting evidence that would support a different conclusion. Cain v. Bain,
709 S.W.2d 175, 176 (Tex.
1986).  We overrule the Stukeses= first issue on appeal.

C.  Is
the Jury=s Finding
of Attorney=s Fees
Supported by Sufficient Evidence?

The Stukeses contend that there was insufficient
evidence to support the jury=s
finding on attorney=s fees
through trial.  They do not challenge the
jury=s finding
on appellate attorney=s
fees.  The jury found $17,250 to be
reasonable attorney=s fees
for the services of Bachmeyer=s
attorney through trial.  Bachmeyer=s attorney testified that he billed
Bachmeyer at an hourly rate of $125.  He
further testified that he billed about 100 hours in the case and that his total
fees were approximately $12,500.  After a
hearing on the Bachmeyer=s
motion to enter judgment, the trial court awarded Bachmeyer $17,250 in attorney=s fees.

A person may recover reasonable attorney=s fees by prevailing on a valid claim
for rendered services, performed labor, furnished material, and breach of oral
or written contract.  Tex. Civ. Prac. & Rem. Code Ann. ' 38.001 (Vernon 1997). 
Reasonableness of attorney=s
fees is a fact question and must be supported by competent evidence.  Smith v. Smith, 757 S.W.2d 422, 424
(Tex. App.CDallas
1988, writ den=d).

We review the jury finding of $17,250 for attorney=s fees under a legal sufficiency
standard of review.  A challenge on
appeal that the trial court failed to disregard a jury=s
finding must be construed as a legal sufficiency challenge.  Brown v. Bank of Galveston
Nat=l Ass=n, 930 S.W.2d 140, 145 (Tex. App.CHouston [14th Dist.] 1996), aff=d, 963 S.W.2d 511 (Tex. 1998).  To determine whether the jury award is
excessive, we look at the entire record and view the matter in light of the
testimony, the amount in controversy, the nature of the case, and our common
knowledge and experience as lawyers and judges.  Wuagneux Builders, Inc. v. Candlewood
Builders, Inc., 651 S.W.2d 919, 922-23 (Tex. App.CFort
Worth 1983, no writ); Argonaut Ins. Co. v. ABC Steel Products Co., 582
S.W.2d 883 (Tex. Civ. App.CTexarkana
1979, writ ref=d
n.r.e.).

Bachmeyer argues that it is within the province of
the jury to decide the reasonableness of the attorney=s
fees awarded.  Bachmeyer relies on Gulf
Paving Co. v. Lofstedt, 188 S.W.2d 155 (Tex. 1945), and Brown, 930 S.W.2d at
145.  In Brown, the court stated:








Generally, it is the province of the jury to
determine the reasonable value of an attorney=s
services.  However, if the evidence is
not contradicted by any other witness, or attendant circumstances, and the same
is clear, direct and positive, and free from contradiction, inaccuracies, and
circumstances tending to cast suspicion thereon, it is taken as true, as a
matter of law. (citation omitted)

 

In Brown, the jury returned a verdict of zero for attorney=s fees. 
The court held that, because evidence was presented on the amount of
attorney=s fees
and that evidence was not contradicted, the amount of attorney=s fees was proven as a matter of
law.  Brown, 930 S.W.2d at 145. 

Bachmeyer=s
attorney testified that his reasonable fees for representing Bachmeyer were
$12,500.  Bachmeyer argues that we are
not bound by this testimony because it was contradicted by the attendant
circumstances of the bad faith trespass counterclaim and the evidence that the
rate charged by Bachmeyer=s
counsel was lower than the reasonable rate charged by other attorneys in the
area.  We disagree.  Attorney=s
fees are not recoverable for defending against the Stukeses= claim. 
Further, both the Stukeses=
attorney and Bachmeyer=s
attorney testified that $125 an hour was a reasonable rate.  There was no evidence to contradict Bachmeyer=s attorney=s
testimony that his services totaled 
$12,500.  Therefore, we take his
testimony as true as a matter of law. 
Because there is no evidence to support the jury=s
award of $17,250, the award is excessive. 
The evidence was legally insufficient to support the jury findings on
attorney=s fees.
Therefore, we sustain the Stukeses=
second issue on appeal.

An appellate court has the duty to reduce the fee
awarded if it is excessive.  Southland
Life Ins. Co. v. Norton, 5 S.W.2d 767 (Tex. Comm=n
App.1928, holding approved); Argonaut Ins. Co., 582 S.W.2d at 889.  A court of appeals may exercise its power to
suggest a remittitur when an appellant complains that there is insufficient
evidence to support an award and the court of appeals agrees but finds that
there is sufficient evidence to support a lesser award.  David McDavid Pontiac, Inc. v. Nix,
681 S.W.2d 831, 838-39 (Tex. App.CDallas
1984, writ ref=d
n.r.e.).  We conclude that there is
evidence to support the lesser award of $12,500.  Accordingly, we condition our affirmance of
the attorney=s fees
award in this case on Bachmeyer=s
filing a remittitur in the amount of $4,750.

                           V. Conclusion








We
affirm the trial court=s take-nothing judgment for the Stukeses= counterclaim. We also affirm the trial
court=s judgment with respect to the attorney=s fees, conditioned on a remittitur of
attorney=s fees in the amount of $4,750. If this
remittitur is not filed within twenty days from the date of this opinion, the
trial court=s judgment as to attorney=s fees will be reversed, and the issue of
attorney=s fees remanded to the trial court for a
new trial. Tex. R. App. P. 46.3.

 

 

RICK
STRANGE

 

JUSTICE

 

August 16, 2007

 

Panel consists of:  Wright, C.J.,

McCall, J., and Strange,
J.











[1]Apparent consent to enter the property or authorized
use is sufficient to defeat a cause of action for trespass. Stone Res., Inc.
v. Barnett, 661 S.W.2d 148, 151 (Tex. App.CHouston
[1st Dist.] 1983, no writ); Ward v. Ne. Tex. Farmers Co-Op Elevator, 909
S.W.2d 143, 150 (Tex. App.CTexarkana 1995, writ denied).  The defendant has the burden of proof to show
consent or authorized use and must plead consent as an affirmative defense. Id.  Bachmeyer had an oral lease to graze cattle
on the Stukeses= property. 
Because he did not plead consent as an affirmative defense, he waived
it; we need not consider whether the Stukeses= claim is
barred by that lease. Tex. R. Civ. P.
94.